Diana versus Oliphant. Good morning. Good morning, Your Honors. May it please the Court. My name is Joanna Reynolds and I represent the appellants here, State Police Lieutenant Willard Oliphant and Captain Carmen Altavilla. And I would like to reserve one minute for rebuttal at this time. Thank you. This case is fundamentally about a short phone call that was made from a taped communication line at a State Police Troop. The purpose of that call was to order Trooper Diana to come back to work. And this was the third time he had been given that order in one week period of time. The first, I'm sorry, the the tape is introduced in evidence did have beep. It did, Your Honor. And I guess there was some argument that maybe the, well, and there was also evidence that it had not been doctored or tampered, correct? There was a bald assertion on the part of Trooper Diana that he did not hear the beeps and he relied on his defense or not argument changed as the case developed. Originally, it was that the somehow that the beeps were added. They did not present any expert testimony with respect to that. It then evolved to once the tape was introduced into evidence that somehow the sound was turned down on one end. Again, there is no evidence other than his assertion that that could have, that that could have happened. You had Paul Ginsberg testify, didn't you? Yes, we did. The tape was not doctored. Yes, we did, Your Honor. That was exactly what we did in that case. And there was no expert testimony offered to refute that evidence. But I guess I gather that whether the sound were turned down would not necessarily be detected by your expert, but you're saying that that argument is mere speculation and no evidence was. Exactly, Your Honor. Well, our position is that this turned down evidence, there was nothing introduced other than Trooper Diana's testimony that the sound could be turned down on one end and kept up at the other end. The tape clearly has the beeps on it. You can hear it. There's no motivation offered for why these officers would do that. There's no indication that they had any means, opportunity or reason to do that and that they had any expertise in order to do that. Was there evidence that it could not be done? That is that it, that you could have that audible beep only on one end of the conversation. There was evidence offered that it could not be done. That came from Trooper Zukoski, who was the communications expert at the State Police, who was responsible for installing the TLP-107 that put the beeps across the line. And he said specifically in response to a question from the judge that that kind of thing could not happen. You could not, the beep was constant across the system or it was removed across the system. You could not turn it down on one end and have it appearing at the other end. The first time that that order was personally delivered to Trooper Diana was on November 14, 2003. The second time on that same day, Trooper Diana called Captain Altavilla in response to getting that order and the captain told him at that time that he had to come back to work or he should have his doctor or union attorney call the State Police Human Resources Office to advise them why he couldn't come back. The third time, and that's the critical time that this case talks about, was when Trooper Diana called on the following Friday, November 21, and Captain Altavilla, who was on leave at the time, found out that he was still disputing the order because the administrative manager from the Troop called him at home. Altavilla then called Lieutenant Oliphant and directed him to call Trooper Diana back on a taped communications line so that there would be documented proof that Trooper Diana caught the order. Trooper, I'm sorry, Captain Altavilla was concerned that he was not understanding that he was being ordered back to work per the Deputy Commissioner of Administration. We submit that that call was made in the ordinary course of police business. That is, from a police supervisor to a police subordinate about an administrative matter, which was a return to work order directed to Trooper Diana, who had been off on disability leave. I have to ask a question because it goes to the very basis of this action. And I simply do not understand why you get into the ordinary course of police business or any of that stuff. Every case that's been presented to us involves the eavesdropping of someone, someone's, two other people or more than two conversations, the conversations of other people. You have a third party eavesdropping on those conversations. Here we have one party to the conversation making the call. I don't know why no one, no one has discussed the separate statutory exclusion for persons who are acting under color of law, intercepting a communication where that person is a party to the communication or where one of the parties has given consent. 18 U.S.C., 2511-2C. Why not that provision? I understand that, Your Honor. The reason, first of all, that was raised in the first summary judgment motion that was filed. The Attorney General's Office had this case prior to the Pennsylvania State Police taking over and that very argument was made that this was a one-party consensual call. The one-party consensual call about a business matter. Exactly. But the problem is, is that a lot of these cases, if you look at Amati, Tarpley, and Blake, they seem to indicate that there's a separate, if the call is made from a Tate police communications line, that that comes under that separate exclusion in the act that isn't the ordinary course of duties. That the one-party consensual issue was supposed to be for investigative purposes and that's usually utilized in the criminal context. That's not what the statute says. And I understand that, but those cases. It's not what Judge Posner says in Amati. I can't, you say it was raised early in the case. We have that, we don't have that before us. But to me, that's what this is. It was raised in summary judgment initially and I understand Your Honor's questions. Again, all of the cases interpreting calls coming from Tate police communication lines, as opposed to a police officer calling a suspect or whatever. All of those cases seem to say that this particular exception is the one that you look to. And I understand your concern. We don't have any of those other cases because nobody's presented them to us. All we're talking about is a third party listening to supposedly private conversations of other people. And Your Honor, I couldn't find any case specifically on point that dealt with this specific kind of issue. There were criminal cases. There's not a criminal case involved here. This is a civil rights case. The only cases that I could find that had to do with Tate communication lines were those cases that you were talking about, the Tarpley, Blake and Amati, where they were listening to including personal conversations on lines. Again, it was raised early in the case that this was a consensual, it came under the consensual thing. And so who decided it wasn't? Well, when basically I talked to wiretap people in the state police and I also spoke to our chief counsel who indicated that they believe that that was not the appropriate section based on these other cases that talked about Tate communication lines. But again, it was properly raised. So you have to apply the event then, don't you? Well, but it was raised in summary judgment before the court and the court specifically rejected it and went to these other cases. The court in its determination on the summary judgment. The court specifically rejected that provision? At least the opinion of the court we had before us. I understand that. But in the response of the court to the first summary judgment motion, the court rejected that, which is why the defense went to this other argument, went to the argument about the Tate communication lines. They indicated specifically that was not an exception that was present in this case, that that went to investigative matters. Our first argument that of qualified immunity is based on the operation of the federal law. An exception to the general wiretapping prohibition is found in 2510 and that's at the definition of an electronic device under federal law specifically excludes any telephones being used by a law enforcement officer in the ordinary course of his duties. That section has been interpreted to mean in other circuits that phone calls made on recorded police lines by police officers in the course of their ordinary duties and here the duties included notifying a subordinate that he had to return to work are appropriate and legal under title three. If that federal statutory section is read in that matter and we submit the reasonable police officers would read it that way, the state police defendants here are entitled to qualified immunity under both title three and the Fourth Amendment. The trial court found, Judge Caputo found, that you didn't preserve the qualified immunity issue with respect to the title three claim. And again, if you look at the record in this case, clearly on page 612 when the motion was made on the Fourth Amendment it also talked about the judge specifically asked and have you, are you also talking about the federal wiretap question, the statutory question? I said yes. There's also additional discussion on page 865 and 866 at the conclusion of the case where again, you'll see the intertwining of those issues. Those cases Tarpley and Blake talk about that intertwining. In fact, one of them specifically says that the two issues, the Fourth Amendment issue and the federal statutory issue are inextricably intertwined that if you were depending on the provisions in the statute that it's inextricably intertwined with that Fourth Amendment issue. So I would suggest that the judge is incorrect about that. If the, I cited in my brief in the Sixth and Eleventh Circuits, courts have already said that recording personal and business calls on police line is legal under the federal statute. If it is legal, the defendants have a right to rely on it and therefore their actions cannot violate the Fourth Amendment. If the defendants in this case had nothing in this circuit to rely on with respect to this particular issue, if they were to look to other circuits, the Eleventh Circuit, the Sixth Circuit, the Seventh Circuit, those courts held the defendants there were entitled to qualified immunity under much more egregious factual circumstances than were involved here. There the defendants were listening to personal conversations. Here there was only a taping of a business call. It is objectively reasonable for both Lieutenant Oliphant and Captain Altavilla to conclude that the call made to Diana was in the ordinary course of their police duties, that is, to communicate in order to return to work. Furthermore, the Federal Act does not require that a recorded line used by police contain beeps on it. So the issue of the beeps doesn't even enter into the question of qualified immunity under the Fourth Amendment and the federal statute. Likewise, under the Pennsylvania Constitution, the defendants are entitled to judgment as a matter of law. And we submit that summary judgment should have been granted in this case, whether it was under the theory that we advanced here or under the theory that we advanced in our application for reconsideration for summary judgment when the tape was first introduced to the judge. That's the first time you raised the issue, though, under the state statute. Yes. Motion for reconsideration. Right. And the reason we did that is because we. Judge Caputo said you didn't raise it in a timely manner. And I understand that, but that was six months before trial. There was time enough for the court to consider at that time. The judge had made a point in the summary judgment motion when the that it was critical to the case about whether or not there were embedded beeps in that tape of a phone call. And when I saw that, I said, why didn't you admit this? Why wasn't this submitted to the court? And I did not get a good answer on that. Basically, it was because it was in the hands of Mr. Bailey because of the way that the tape had been. It had not been saved by the state police. It was given to the Pennsylvania State Troopers Association as at the request of their attorney. And then it was given to Mr. Bailey whenever he took over the civil rights case. So we had to get it back from them. But again, under Pennsylvania law, it is not unlawful for police to tape communications going into and out of a police department as long as the system meets the three criteria established in the act. That is that the telephones were being used for administrative purposes and there were periodic warning beeps. The recordings may be destroyed and a non-recorded telephone line was made available for public use. In this case, the dispute was over whether the lines were used for administrative purposes and whether there was a periodic beep on the line. There is no definition of administrative purposes in the act. Even though we asked the trial court to define that term for the jury, and even though the court defined ordinary course of business for purposes of the federal act, the judge refused to define that term. However, we submit that under the everyday meaning of administrative, that is, of or relating to management or the execution of public affairs, that Oliphant's act of calling Trooper Diana was a call made for administrative purposes, that is, to convey an order to return to work. If you listen to the tape, you can hear as you've indicated. It's the call for administrative purposes relates simply to the subject matter of the call rather than the purpose behind the call. As I gather, there was the person who ordered the call wanted to make sure that it was recorded. Is that correct? Yes. He wanted evidence of that because he was concerned about. So is that relevant? Does that make any difference? It does not because the real purpose is to deliver the order and orders are delivered all the time in police departments over those tape communications line. They call police officers to come to work. They tell them not to report to work. They call them because there's a riot in the vicinity and they have to call out every Trooper in the immediate vicinity. They're used for those personnel purposes all the time. This was just another personnel purpose here. But it resulted in a jury award of over half a million dollars. I understand. And truly, I see no basis for that award. As I've argued in the brief, it was reduced to $50,000 but the punitive damages were kept. There's no indication that there was any malice on the part of these defendants to do anything bad to Trooper Diana. In fact, if anything, their animus was that they were trying to communicate this order to him so he wouldn't get into further hot water. And nothing happened to Trooper Diana as a result of this. He stayed. He said he was emotionally damaged. I understand that he makes that argument. He never went to a doctor. He never took any medication, any prescription medication that we're aware of. If there was any damages in this case, it was extremely slight. To me, a lot of what happened in this case, in my opinion, was smoke and mirrors and the jury bought into it. I understand that. And I understand I have that heavy burden of showing that this is a question of law now. But again, we never saw the damages here. When he came back to work, he stayed off of workers' comp. So he wasn't even forced to return to work. And when he came back, within six months, he was promoted to corporal. There's no damage whatsoever. You look at all of these other cases, people had, judges were recorded for months on end about personal conversations. Other persons were transferred out of their jobs and stuff. Nothing happened to Trooper Diana here. Good. Thank you, Mr. Reynolds. Mr. Holmes, good morning. Good morning. I'm Bart Holmes for the appellee, Mario Diana. I disagree with Ms. Reynolds' discussion relative to beeps on the telephone or on the tape, Your Honor. While it is true that the tape that was received from the state police does have beep tones embedded in it, not only did Mr. Diana testify that there were no beep tones on the line when he spoke to Lieutenant Oliphant, but in addition to that, another trooper, Gerald Williams, also testified that when he overheard Trooper Zukoski, the troop communications specialist, taping or re-taping the tape, he did not hear beep tones on the line. Apparently he only heard the re-taping for 10 to 15 seconds. That's correct, Your Honor. However, the... And here the beep goes every 22. I beg your... I think here the beep goes every two, 22 seconds. Yes, Your Honor. So, so certainly the, finally Trooper Zukoski, who actually made the recording, did not recall whether he heard any beeps on the line. So I would just respectfully suggest that it's not mere bald assertion by Mr. Diana that there were no beeps on that line. Certainly, Lieutenant Oliphant indicated that he did not tell Trooper Diana that he was recording the call. You know, obviously his explanation is that there was no, no need to because the beeps were on the line. However, Mr. Diana did not hear the beeps. Mr., or Trooper Williams, for the amount of time that he heard a beep. And Trooper Zukoski could not recall whether he heard beeps or not. So I think that, that piece goes beyond mere assertion. And I think that that is, in essence, the crux of this matter from a legal perspective, is the various cases that have been raised by the appellant in this matter are distinguishable in the sense that a normal recording, I believe. Was this done for administrative purposes in your view? I beg your pardon? Was the recording done for administrative purposes in your view? It's possible. Certainly, that's the appellant's explanation. However, why there was testimony introduced at trial to indicate that this was not normally what was done when a trooper was called with respect to some sort of work-related issue. Although, Your Honor, perhaps in follow-up to your question, the jury was instructed with respect. Administrative purposes wasn't defined, but the jury was instructed on that. And clearly based on the testimony they heard at trial, they didn't believe that it was for an administrative purpose. You say at page 28 of your brief that they needed a warrant before they could call Diana to tell them to return to work. Are you serious about that? Your Honor, perhaps an overstatement on my part. Certainly, there are exceptions to within Title III as well as Pennsylvania Wiretap Act. However, to surreptitiously record somebody. When you say surreptitiously record, that's your interpretation. Well, that was also the jury's determination. The tape is in evidence and there's a beep on the tape. That granted, Your Honor. However, the jury was that they could consider not just that tape, but the other testimony that was adduced at trial. In addition to that, there was some dispute at trial whether the tape that was actually being introduced was the actual original tape or not. Should we look at this as a one-party consensual call as Judge Barry, in her question, she asked your worthy opponent whether we were on the wrong track here that this is not a surreptitious call? It could be interpreted that way, Your Honor. However, it was not and that was not raised below. Your adversary says it was raised below. I would have to consult the record, Your Honor, if that was indeed raised in that motion for summary judgment. With respect to the ordinary... Nobody's raised it on appeal. No, Your Honor. That is for sure. No, Your Honor. And the judge didn't deal with it in... the judge did not deal with it in his opinion. Yes, Your Honor. With respect to the ordinary course of police business under Title III, the jury was instructed that if they found that this was the ordinary course of police business, an investigative purpose, in other words, that they would certainly... they would have to... An ordinary course of police business does not mean it must be investigative. No, you're right, Your Honor. I misspoke. And the trial judge properly instructed the jury that they could consider the recording as it was to be in the ordinary course of police business. The trial judge did not tell the jury that they had to find that there was an investigative reason in order to find that it was in the ordinary course. How could a phone call to a police officer telling him that he has to report for duty the following day not be within the ordinary course of police business? Well, the purpose for the phone call needs to be considered in the context. Mr. Dian was brought on disability worth of workers compensation claim. He had a discussion, or at least he testified that he had a discussion with Captain Altavella relative to his condition and that his doctor had instructed him that he was not to return to work. It's our position that the reason for the telephone call was not just simply to document that Mr. Dian had been told because Mr. Dian had already been told. Captain Altavella had a trooper go to Mr. Dian's home with the appropriate paperwork. But that was days earlier. That was two weeks earlier. Yes, your honor. And it's due to report the following day and they're telling him that there's been a communication with the director of personnel Linda Bonny and he has to come in. I mean, what could be more business of the police than that? Well, the concern, your honor, was that what they were trying to do was they're trying to gather information about his workers compensation claim. Well, that's your speculation is that the tape certainly speaks for itself. Yes, your honor. Understood with respect to qualified immunity as the trial court pointed out, certainly title three provides exceptions to liability under title three. But it does not trump Fourth Amendment jurisprudence. Respectfully, the cat's holding. And with respect to that, particularly when Captain Altavella, there's back to cats again. With respect to qualified immunity, your honor, did you just say cats again? Yes. So that's you need a warrant kind of thing again. Well, if you're going to surreptitiously record somebody, your honor, and again, the right to privacy of a phone call from from an officer to another officer saying you've got to be back at work tomorrow. Where does cats come into play here? If your honor, if Mr. Diana had no notice that that telephone call was being recorded, then he certainly had an expectation of privacy. With respect to that, it's understood that there are two people on that on that telephone call. But it's a it's one step beyond that when that telephone call is recorded without the other person's consent or knowledge. Okay, that's your argument. Yes, your honor. Yes, your honor. With respect to the Pennsylvania Wiretapping Act, that wasn't raised below and shouldn't be considered by the court. The question of administrative purpose, it is entirely possible to interpret this telephone call as involving an administrative purpose just based simply on what was discussed. You're saying on the Pennsylvania Wiretapping Act that it was not raised below in the trial court. You mean in terms of Rule 50 motion? It wasn't raised in Rule 50 motion, your honor. Yes, your honor. The court did instruct the jury with respect to administrative purpose. It did not define administration. But in as the court's no doubt noted in the in the trial court's memorandum with respect to the post-trial motions in this matter, the definition of administrative encompasses what Ms. Reynolds has suggested that the court should interpret administrative to be. The jury observing the cross-examination, direct examination, determined that this was not an administrative purpose. This was in fact a police lieutenant who was looking for an opportunity to gather information about a worker's complaint. With respect to damages, assuming and once again, as I think the court must, that the jury that there is that minimum quantum of evidence upon which the jury can rule, the jury observed that a state police captain who had taught wiretap violations by his own testimony, a state police lieutenant called a state police trooper on a recorded line without notifying that trooper that he was in fact being recorded at the time. And that's willful, wanton, horrible? Well, Your Honor, Mr. Diana, in the context that Mr. Diana had been on disability for some time, you know, he had a wife, a young child at home. He was concerned that the fact that his lieutenant is calling him and recording him. What's the standard for punitive damages? Put aside compensatory drug. What's the standard for verifying? You need a showing of malice, Your Honor. Malice. Yes, Your Honor. And I believe that based on the circumstances here, the jury again, judging the credibility of the witnesses, listening to what they said and their answers to the question, determined that in fact the beep volume had been turned down as there was testimony on the record that the beep volume could be turned down so that it couldn't be heard. And that these two gentlemen had done this for a purpose of hurting Mr. Diana. You know, I can see in another case that that could be so. But this case, if you read what, if you listen to the tape, you read a summary of what the tape said, they're not trying to pull a fast one on you. Right. No, I'm telling you, just get back to work. Right. That's it. I understood, Your Honor, but the when he found out, when Trooper Williams called him and said, hey, did you know you'd been recorded? And he said no. And as a state trooper, he knew that the only reason that calls are recorded, trooper to trooper, is when frankly something's up, there's a problem. There was testimony put on the record that troopers normally, if they call in on a recorded line, will be switched to an unrecorded line for things like calling off sick or scheduling, that sort of thing. So the impact on Mr. Diana was, is relatable to his experience as a state trooper. He realized that the fact that his lieutenant was recording him suggested things more importantly than the fact that he was just merely being recorded. If the Court has no further questions. Anything else? Good. Thank you very much, Mr. Hall. I just have a couple of quick things in rebuttal. There's nothing again in the federal law that says that there must be notice. Again, the beefs do not have to be on the line in order to get qualified immunity under the federal statute. Secondly, and a point I wanted to address because I don't know that it's been raised, the federal judge declined to grant or to charge the jury on the good faith defense. We specifically objected to that in jury instructions. We specifically asked that the good faith defense, and that's subjectively did the defendants believe that they were complying with the statutory provision in both acts. He refused to grant that instruction and said that the statutory authorization that both statutes were talking about were outside the statute and therefore would not would not grant our suggestion on that. And we think that was critical too because the jury never got the chance to look at that good faith defense. With respect to Diana, the third phone call, that phone call was made because Trooper Diana called the barracks. So this isn't like the big bad state police coming down on Trooper Diana. Trooper Diana calls back after he's been given that order twice and says, do I really have to come back to work on Monday? That's why Lieutenant Oliphant is ordered to make that phone call because he wants to clarify that with Trooper Diana to make sure that he understands that he has to come back to work on Monday and to document that call. Furthermore, there was information here in an argument by my opponent that the jury decided that this was not made for administrative purpose. We don't know that. We don't know why the jury decided that they did. They may have bought into this, you know, what I consider to be a hokey argument that there were no that the beeps were added after the fact when there's no special interrogatories on these. There were not. No. So again, and I think that's critical because they may have thought they may have thought that it was had to be for investigative purposes only. But we know they Mr. Holmes is probably right given the evidence that was presented. But of course, we don't know for sure because there were no special interrogatories. Well, that's true. But we again don't know whether it was because the beep issue or because they concluded this was not an administrative purpose case with the general verdict. Yeah, we would ask the court here to grant judgment as a matter of law on the on the basis of qualified immunity as to the federal issues. Again, we believe those issues were both preserved good and as a matter of law on the we understand your position. Okay. Thank you very much. Good case was very well argued. We thank counsel. Thank you. And we will take the matter under advisement.